IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JERRY LUJAN,

    Plaintiff,

v.                                            Civ. No. 20-408 GBW

KILOLO KIJAKAZI, *Acting Commissioner*
*of the Social Security Administration*,

    Defendant.

## ORDER DENYING REMAND

This matter comes before the Court on Plaintiff's Motion to Reverse or Remand for Rehearing the Social Security Agency ("SSA") decision to deny Plaintiff Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income ("SSI"). *Doc. 30*. For the reasons explained below, the Court DENIES Plaintiff's motion and AFFIRMS the judgment of the SSA.

### I.    PROCEDURAL HISTORY

Plaintiff filed an initial application for SSDI and SSI on June 14, 2016, alleging disability beginning September 9, 2014. Administrative Record ("AR") at 218; AR at 222. Plaintiff's application was denied on initial review on November 2, 2016, and again on reconsideration on May 5, 2017. AR at 131, 141. On June 18, 2018, a hearing was held by an Administrative Law Judge ("ALJ"). AR at 35–77. The ALJ issued an unfavorable decision on February 26, 2019. AR at 16. Plaintiff sought review from the

Appeals Council, which denied review on January 30, 2020, AR at 5, making the ALJ's denial the Commissioner's final decision, *see* 20 C.F.R. §§ 404.981, 422.210(a).

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800–01 (10th Cir. 1991). "In reviewing the ALJ's decision, [the Court] neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.3d at 800 (internal quotation marks omitted). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

### III.   ALJ EVALUATION

#### A. Legal Standard

For purposes of both SSDI and SSI, an individual is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520.[1] If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id*. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable … impairment … or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal

---

[1] Plaintiff has applied for both SSDI and SSI. The five-step test for determining disability and other relevant regulations are the same for both benefits but are codified in two separate parts of the Code of Federal Regulations. *See* 20 C.F.R §§ 404.1520, 416.920. Part 404 of Title 20 of the Code of Federal Regulations governs SSDI, while Part 416 governs SSI. In the interests of efficiency and judicial economy, the Court only cites to applicable regulations in Part 404 of Title 20 of the Code of Federal Regulations in this Order, but the analogous regulations in Part 416 also apply.

one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id.* § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id.* at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

B. <u>**The ALJ's Decision**</u>

On February 26, 2019, the ALJ issued a decision denying Plaintiff's applications for SSDI and SSI. *See* AR at 16. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ found that Plaintiff had "not engaged in substantial gainful activity since September 9, 2014, the alleged onset date." AR at 22. At step two, he found that Plaintiff suffers from "the following severe impairments: Gout, Bilateral Degenerative Joint Disease of the Shoulders, and Inflammatory Arthritis." *Id.* He also noted that Plaintiff has a non-severe chronic liver disease. *Id.* At step three, the ALJ found that Plaintiff's severe impairments—both individually and in combination—did not meet or equal the severity of an impairment in the Listings. *Id.*

At step four, the ALJ found that Plaintiff does not have the RFC to return to his past relevant work[2] but does have the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), subject to several limitations. AR at 22-23, 25-26. The ALJ found that Plaintiff can only occasionally lift, carry, push, and pull ten pounds, and frequently lift, carry, push, and pull less than ten pounds. AR at 23. He found that Plaintiff can sit for six hours in an eight-hour workday and stand or walk for about two hours in an eight-hour workday, with normal breaks. *Id.* He also found that Plaintiff can

---

[2] The ALJ found that Plaintiff's past relevant work is: Sandwich Maker, Industrial Cleaner, Well Service Floor Worker, Home Attendant, Hand Packager, Laundry Worker I, Fast Food Cook, Construction Worker I, Truss Builder, and Retail Storage Manager. AR at 26.

occasionally do the following: climb ramps or stairs; stoop, crouch, kneel, and crawl; and reach overhead bilaterally. *Id.* Finally, the ALJ found that Plaintiff can never climb ladders, ropes, or scaffolds. *Id.*

The ALJ concluded that Plaintiff's gout, bilateral degenerative joint disease of the shoulders, inflammatory arthritis, and chronic liver disease could reasonably be expected to cause his alleged pain and other symptoms. *Id.* He held, though, that Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.* In doing so, he gave significant weight to the medical opinions of state medical consultants Dr. Yondell Moore and Dr. Myron Watkins and little weight to the opinion of Dr. Athanasios Manole. AR at 24-25.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and determined that he is capable of making a successful adjustment to jobs that exist in significant numbers in the national economy. AR at 26-27. Accordingly, the ALJ concluded that Plaintiff was not disabled (as the Social Security Act defines the term) from September 9, 2014, through the date of his decision. AR at 27.

## IV. PARTIES' POSITIONS

Plaintiff asserts that the ALJ erred at step four by (1) "fail[ing] to meaningfully discuss" why the medical evidence does not support Mr. Lujan's claims that Hepatitis

C, cirrhosis, and "pain and/or swelling in [Plaintiff's] wrists, elbows, shoulders, and back" impair his ability to function, *doc. 30* at 1, 6;  (2) "ignor[ing] both medical evidence and the testimony of [Plaintiff] regarding [Plaintiff's] difficulty in twisting his wrists, elbows, and shoulders, *id.* at 4; and (3) failing to consider testimony from the vocational expert that the partial loss of bilateral manual dexterity and/or affording two additional breaks of twenty minutes each or a sit/stand option would preclude all competitive employment, *id.* at 7.  Defendant responds that the ALJ's decision should be affirmed because (1) the ALJ's RFC assessment was supported by substantial evidence, *doc. 34* at 7-17; and (2) the ALJ acted within his discretion in rejecting aspects of Plaintiff's and the vocational expert's testimony that were not supported by the record, *id.* at 17.

V.     **ANALYSIS**

The Court finds that the ALJ's RFC assessment was supported by substantial evidence and that the ALJ did not err in how he considered or discussed the medical evidence, Plaintiff's symptom testimony, or the vocational expert's testimony.

A.  **The ALJ adequately discussed the medical evidence.**

Plaintiff argues that the ALJ ignored medical evidence when determining Plaintiff's RFC because he failed to discuss certain evidence in his decision.  *Doc. 30* at 4. Specifically, Plaintiff contends that the ALJ ignored portions of Plaintiff's treatment notes from a November 10, 2016, rheumatology visit indicating that Plaintiff had been

referred for evaluation of polyarthralgia and polyarthritis; reported pain in his fingers and "most other joints" and swelling in his left wrist; and reported difficulty with various daily activities, such as dressing, getting out of bed, lifting, and walking outdoors. *Id.* (citing AR at 438-443).

The Court finds that the ALJ did not ignore these portions of Plaintiff's treatment notes and did not err in failing to explicitly discuss them. First, Plaintiff is incorrect that the ALJ did not consider that Plaintiff was referred and evaluated for polyarthralgia and polyarthritis; the relevant portion of the ALJ's decision reads: "The medical impression was polyarthralgia and polyarthritis." AR at 24. Plaintiff is also mistaken that the ALJ did not consider or mention that Plaintiff reported joint pain at the November 2016 rheumatology visit; the ALJ's discussion of that visit reads: "On [November 10, 2016], [Plaintiff] complained of diffuse pain in the shoulders, knees, elbows, fingers, and neck." *Id.*

Although the ALJ did not explicitly recount Plaintiff's reported difficulty at his November 10, 2016, appointment with dressing, getting out of bed, lifting, and various other activities, an ALJ is not obligated to discuss every piece of medical evidence. *See Bales v. Colvin*, 576 F. App'x 792, 797 (10th Cir. 2014). "While '[t]he record must demonstrate that the ALJ considered all of the evidence,' there is no requirement that an ALJ 'discuss every piece of evidence.'" *Id.* (quoting *Mays v. Colvin*, 739 F.3d 569, 576

(10th Cir. 2014)).  The Court finds no indication that the ALJ failed to consider Plaintiff's difficulty with certain daily activities when assessing Plaintiff's RFC.  The ALJ explicitly discussed Plaintiff's statements at a November 4, 2016, appointment that he had difficulty with movements such as bending, lifting, pulling, pushing, squatting, and turning, AR at 24, and again cited Plaintiff's difficulty with these movements when he gave little weight to the medical opinion of Dr. Manole, AR at 25.  Therefore, the Court finds no error in the ALJ's failure to explicitly mention the portion of Plaintiff's November 10, 2016, treatment notes to which Plaintiff refers.

Plaintiff also argues that the ALJ's discussion of the medical evidence was inadequate because "[t]he ALJ failed to give evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources."  *Doc. 30* at 5.  This argument is contradicted by the ALJ's description of the weights he assigned to the medical opinions of Dr. Manole, Dr. Moore, and Dr. Watkins.

The ALJ stated that he gave "little weight" to the medical opinion of Dr. Athanasios Manole, "significant weight" to the opinion of state medical consultant Dr. Yondell Moore, and "significant weight" to the opinion of state medical consultant Dr. Myron Watkins.  AR at 24-25.  The ALJ also discussed these physicians' opinions and explained his reasoning for the evidentiary weights he assigned to them, *see id.*, as he

9

was required to do because he did not give controlling weight to a treating source's medical opinion, *see* 20 C.F.R. § 404.1527(c), (e).  Therefore, contrary to Plaintiff's argument, it is readily apparent that the ALJ gave at least some evidentiary weight to administrative medical findings and medical opinions in the record.

As for Plaintiff's argument that it was error for the ALJ to not give "controlling weight" to any prior administrative medical findings or medical opinions, the Court notes that the concept of "controlling weight" is relevant to the ALJ's weighing of treating source medical opinions under § 404.1527.[3]  *See* 20 C.F.R. § 404.1527(c); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  For purposes of assessing a medical opinion's evidentiary weight for claims filed before March 27, 2017,

> A physician's opinion is deemed entitled to special weight as that of a "treating source" when [the physician] has seen the claimant "a number of times and long enough to have obtained a longitudinal picture of the claimant's impairment," taking into consideration "the treatment the source has provided" and "the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories."

*Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003) (internal brackets omitted) (quoting 20 C.F.R. § 416.927(d)(2)(i), (ii)).  Plaintiff does not identify any medical opinions he argues should have been deemed treating source opinions under this definition.  *See*

---

[3] Because Plaintiff filed his claims for SSI and SSDI prior to March 27, 2017, 20 C.F.R. § 404.1527 governs the ALJ's evaluation of medical opinion evidence.

*doc. 30* at 5. Nor does the Court find any such opinions in the record.[4] The Court therefore finds irrelevant the ALJ's failure to assign "controlling weight" to any portion of the medical evidence in the record.

Finally, Plaintiff identifies as an issue "[t]he ALJ's fail[ure] to meaningfully discuss why the medical evidence did not support Mr. Lujan's complaints that Hepatitis C or Cirrhosis of the liver interfere with his ability to function." *Doc. 30* at 1. Plaintiff did not brief this issue after identifying it. *Cf. id.* at 4-5 (arguing that the ALJ failed to meaningfully discuss medical evidence relevant to Plaintiff's joint pain and swelling, rather than Plaintiff's Hepatitis C or cirrhosis symptoms). "Courts may decline to consider arguments which are inadequately developed or presented superficially," *Abreu v. Berryhill*, No. CV 16-853 JCH/CG, 2017 WL 4286214, at *3 (D.N.M. Sept. 26, 2017) (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012), and *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994)), and "[w]here an appellant lists an issue, but does not support the issue with argument, the issue is waived on appeal," *Wall v. Astrue*, 561 F.3d 1048, 1065 (10th Cir. 2009) (quoting *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1031 (10th Cir. 2007)). Therefore, the Court declines to consider and deems waived Plaintiff's argument that the ALJ inadequately

---

[4] The Court finds the administrative record to contain medical source opinions from the following physicians: Dr. Ramage, Dr. Moore, Dr. Manole, and Dr. Watkins. None of these physicians are "treating sources." *See, e.g.*, AR at 24-25, 86, 90, 93, 109, 635-47.

11

discussed why the medical evidence relating to Plaintiff's Hepatitis C and cirrhosis symptoms does not support a more restrictive RFC finding.  However, to the extent this argument is incorporated in Plaintiff's broader argument that the ALJ did not consider Plaintiff's subjective symptom testimony when determining his RFC, the Court rejects this argument for the reasons discussed at greater length below.

### B. The ALJ's assessment of Plaintiff's subjective symptom testimony is supported by substantial evidence.

First, the Court addresses Plaintiff's argument that he is "not required to provide objective evidence of the *severity* of his symptoms, but only to provide objective findings of an impairment that *could be* the basis for his allegations of disability," and that he fulfilled that obligation by providing diagnoses of "Gout, Bilateral Degenerative Joint Disease of the Shoulders, Inflammatory Arthritis, Hepatitis C, Chronic Joint Pain, Osteoarthritis, Chronic Gastritis, Cirrhosis, and Hepatomegaly." *Doc. 30* at 6 (citing *Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir. 1987)).  The Court construes these statements as an argument that the ALJ erred by partially rejecting Plaintiff's subjective symptom allegations because he found they were "not entirely consistent" with the medical evidence and other record evidence.  *See* AR at 23.

The three-step analysis set forth in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), governs ALJs' evaluations of plaintiffs' allegations of disabling pain.  *Keyes-Zachary*, 695 F.3d at 1166.  At step one, the ALJ must determine "whether the claimant established a

12

pain-producing impairment by objective medical evidence." *Id.* At step two, the ALJ "takes the subjective allegations of pain as true," *Luna*, 834 F.2d at 163, and assesses "whether there is a 'loose nexus' between the proven impairment and the [c]laimant's subjective allegations of pain," *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (quoting *Luna*, 834 F.2d at 164); *accord Keyes-Zachary*, 695 F.3d at 1166-67. Finally, at step three, the ALJ had to assess "whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling." *Keyes-Zachary*, 695 F.3d at 1167; *see also Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (requiring the ALJ to consider a claimant's assertions of pain at *Luna* step three and "decide whether he believed them" (quoting *Luna*, 834 F.2d at 163)).

This *Luna* framework is equivalent to the two-step process prescribed by the SSA for evaluating a claimant's statements about pain and other symptoms. Step one of the agency process combines steps one and two of the *Luna* analysis to ask "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce [the] individual's symptoms, such as pain." *See* SSR 16-3P, 2016 WL 1119029, at *2 (Mar. 16, 2016); 20 C.F.R. § 404.1529(b). Step two directs the ALJ to "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the] individual's ability to perform work-related activities." *See* SSR 16-3P, 2016 WL 1119029, at *2; 20 C.F.R. § 404.1529(c). In making

that evaluation, the agency "consider[s] all of the available evidence from [the individual's] medical sources and nonmedical sources about how [his or her] symptoms affect [him or her]," including medical opinions, objective medical evidence, and "any other information [the individual] may submit about [his or her] symptoms." 20 C.F.R. § 404.1529(c).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but Plaintiff's statements were "not entirely consistent with the medical evidence." AR at 23. Therefore, both the *Luna* framework and SSA regulations required the ALJ to "consider all of the available evidence" about Plaintiff's symptoms—including his pain—to determine whether they limit his capacity for work. *See* 20 C.F.R. § 404.1529(c)(1); *Luna*, 834 F.2d at 165. While Plaintiff is correct that *Luna*'s first two steps did not require him to provide objective evidence about the severity of his symptoms, it was not error for the ALJ to proceed to consider "medical evidence and other evidence in the record" when partially rejecting Plaintiff's subjective symptom allegations at *Luna* step three. *See* AR at 23.

Additionally, the ALJ adequately explained the basis for his finding that Plaintiff's statements were not wholly consistent with the medical evidence. Tenth Circuit precedent and SSA rulings and regulations provide factors that ALJs should consider in evaluating the credibility of claimants' subjective pain allegations,

14

including: (i) the claimant's activities of daily living; (ii) the location, duration, frequency, and intensity of the claimant's pain and other symptoms; (iii) precipitating and aggravating factors, including psychological disorders; (iv) the persistency of the claimant's attempts to find relief for these symptoms; (v) the regularity of the claimant's contact with medical professionals; (vi) the type, dosage, effectiveness, and side effects of any medication that the claimant takes or has taken to alleviate her symptoms; (vii) treatment, other than medication, that the claimant receives or has received for her symptoms; (viii) the claimant's willingness to try prescribed treatment; and (ix) any measures that the claimant uses or has used to relieve her pain or other symptoms (e.g., use of crutches or cane, lying flat on her back, sleeping on a board, etc.). *See Keyes-Zachary*, 695 F.3d at 1167 (quoting *Luna*, 834 F.2d at 165-66); 20 C.F.R. § 404.1529(c)(3); SSR 16-3P, 2016 WL 1119029, at *7.

When applying these factors in credibility determinations, ALJs must "closely and affirmatively link[] [their findings] to substantial evidence" and articulate specific reasons for rejecting claimants' allegations. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citing, *inter alia*, *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)). However, ALJs' credibility findings need not be a "formalistic factor-by-factor recitation of the evidence," *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001), and courts defer to ALJs' credibility determinations so long as they are supported by substantial evidence, *Wilson*

*v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010).

Here, the ALJ detailed Plaintiff's allegations concerning the location, duration, and intensity of Plaintiff's pain in his back, left wrist, knees, and shoulders at his medical appointments between 2014 and 2017; noted that cold weather and exertion are precipitating factors for Plaintiff's back pain; and noted Plaintiff's report that he had tried rehab exercises for his shoulder and the exercises had led to "significant improvement." *See* AR at 23-24. The ALJ also discussed two sets of x-rays, one of which showed minor abnormalities in two disc heights in Plaintiff's spine and no other issues in his spine, hands, chest, and right elbow, and the other showing no issues in Plaintiff's left hand and only minor abnormalities in his right hand and elbow. AR at 24. In addition, in an earlier portion of his decision, the ALJ noted that "[a]s of the hearing date [Plaintiff] had received no treatment for [his liver disease] and was noncompliant as [he] continued to consume alcohol notwithstanding the diagnosis and recommendations to cease alcohol use." AR at 22 (citing AR at 358, 360, 363, 377, 438). The ALJ also stated that "[t]he medical evidence does not show a history of complications from Chronic Liver Disease." *Id.* Therefore, the ALJ grounded his credibility determination in specific record evidence that he articulated in his decision. *See Holbrook v. Colvin*, 521 F. App'x 658, 663 (10th Cir. 2013); *Qualls v. Astrue*, 428 F. App'x 841, 848 (10th Cir. 2011).

16

The Court moreover rejects Plaintiff's contention that the ALJ "never described which parts [of Plaintiff's testimony] he did not believe." *Doc. 30* at 5. The ALJ stated that he evaluated Plaintiff's statements about the intensity, persistence, or functionally limiting effects of his pain and other symptoms for their effect on Plaintiff's ability to do work-related activities, AR at 23, and clearly described the RFC finding that he determined was supported by the evidence in the record, AR at 22-23. Therefore, it is clear that the ALJ rejected the portions of Plaintiff's symptom allegations that were inconsistent with his RFC finding and accepted those portions that were consistent with the RFC. *See Castillo v. Astrue*, Civil Action No. 10-1052-JWL, 2011 WL 13627, at *9 (D. Kan. Jan. 4, 2011).

### C. The ALJ did not err in failing to discuss aspects of the vocational expert's testimony that were not supported by the record.

Finally, Plaintiff argues that the ALJ erred by failing to consider the vocational expert's testimony at the June 18, 2018, hearing that bilateral "partial loss of manual dexterity [limiting the use of the hand to one hour per day] would preclude the occupations offered by the vocation[al] expert," and "two additional breaks of twenty-minutes each or a sit-stand option at-will would preclude all competitive employment." *Doc. 30* at 7 (citing AR at 73-75). This argument is directly rebutted by language in the ALJ's decision explaining that the ALJ did consider this testimony but did not base his decision on it because the additional degree of limitations it assumed "are not

17

supported by the record as a whole." *See* AR at 27.

Moreover, the ALJ's decision to not base his decision on this testimony was proper. An ALJ need not consider testimony from a vocational expert that is elicited by questions which assume limitations that are unsupported by the record. *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000); *see Sloan v. Apfel*, 132 F.3d 43 (10th Cir. 1997) (unpublished table decision) (citing *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996), and *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990)) (finding that an ALJ is not bound by a vocational expert's opinion in a response to a hypothetical question that assumes impairments that the ALJ does not accept as true). Here, the hypotheticals that elicited the testimony in question assumed additional limitations that the ALJ ultimately did not incorporate in his RFC finding. *See* AR at 22-23, 73-75. Therefore, the Court finds no error in the ALJ's decision to not include as a basis for his RFC finding the vocational expert's testimony that additional limitations to Plaintiff's RFC would preclude all competitive employment.

## VI. CONCLUSION

For the foregoing reasons, the Court finds that the ALJ did not commit reversible error. Therefore, the Court DENIES Plaintiff's Motion to Reverse and Remand (*doc. 30*) and AFFIRMS the Commissioner's decision.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**